[No. B120371. Second Dist., Div. Seven. Apr. 19, 1999.]

MITSUI O.S.K. LINES, LTD., et al., Plaintiffs and Appellants, v. DYNASEA CORPORATION, Defendant and Respondent.

## COUNSEL

Kirlin, Campbell & Keating and David Weil for Plaintiffs and Appellants.

Porter, Groff & Lodwick, Michael W. Lodwick and George P. Hassapis for Defendant and Respondent.

## OPINION

**NEAL, J.—**

### SUMMARY

Where transaction documents show that a purchaser of goods agreed to include freight in its price to the seller, and the seller agreed to prepay the

ocean carrier's freight charges, the carrier cannot recover its freight charges from the buyer after the seller fails to pay those charges.

## FACTS AND PROCEEDINGS IN TRIAL COURT

Appellant Mitsui O. S. K. Lines, Ltd., an ocean shipper, sued respondent Dynasea Corporation, a San Diego-based shrimp importer, to recover approximately $12,000, its charges for carrying four containers of shrimp from Thailand to Los Angeles.

Dynasea moved for summary judgment. The evidence presented in connection with the motion established the following facts without dispute:

Dynasea ordered $700,000 worth of shrimp from Thailand-based Ideal Trading Company. The transaction was memorialized in four invoices Ideal issued to Dynasea and also apparently in a purchase order, which the invoices refer to as "P.O. No. 61," but is not included in the record. Ideal's invoices noted they were drawn under an irrevocable letter of credit issued by Bank of America, Los Angeles. The letter of credit specified that payment would be made to Ideal only after the bank was presented with a United States Department of Commerce inspection report for each container, approved by Dynasea.

Dynasea's president attested by declaration that the shrimp were purchased "C+F, freight prepaid" for delivery to Los Angeles.

The shrimp were shipped to Los Angeles in five separate containers. A separate "combined transport bill of lading," bearing Mitsui's name and logo, and signed by Mitsui's representative, was prepared for each container. Each bill of lading identified Ideal as the "shipper" and Dynasea as the "consignee." Each bill stated "any freight, bunker and DDC charges are prepaid 'freight prepaid,' " and each also stated "prepaid at Bangkok." The terms and conditions of the bills[1] defined "Merchant" as "any Person owning or entitled to the possession of the Goods," and stated that "In accepting this Bill of Lading the Merchant expressly accepts and agrees in all its terms whether printed, stamped, or written, or otherwise incorporated, notwithstanding the non-signing of this bill . . . by Merchant." The terms and conditions further provided that the "Merchant" was liable to Mitsui for payment of all freight.

Ideal tendered a check to Mitsui in prepayment for the freight, but it was eventually dishonored.

When the containers arrived in Los Angeles, Mitsui refused to deliver them unless Dynasea paid the outstanding freight charges. Dynasea agreed to

---

[1]These appear in fine print on the rear of the bills. The copy included in the record is not readable, but the parties apparently do not dispute the terms noted above.

accept and pay the charges for one container. Dynasea had the container of shrimp inspected, concluded the shrimp did not conform to Dynasea's order, and declined to accept the other containers.

Thereafter, Mitsui sold the shrimp for salvage, and in its action sought to recover from Dynasea the unpaid balance of its freight charges.

The trial court granted Dynasea's summary judgment motion. Mitsui appealed.

## DISCUSSION

■ In the absence of a controlling statute, contractual arrangements and the law of contract govern whether a consignee of an ocean shipment is liable to pay the carrier's freight charges. (*States Marine Int., Inc.* v. *Seattle-First Nat. Bank* (9th Cir. 1975) 524 F.2d 245, 247.)[2] The contract may be express; in some instances courts have implied a promise by the consignee to pay the freight. (*Ibid.*) As in other contract cases, the result depends primarily on the particular facts of the case.

■ Here, the undisputed evidence showed that Dynasea agreed to pay Ideal a price that included freight, and that Ideal in turn agreed that Ideal, not Dynasea, would pay Mitsui. Dynasea's president testified in his declaration that the shrimp were purchased "C + F, freight prepaid, for delivery to Los Angeles." "C & F" is defined in the Uniform Commercial Code to mean "that the price so includes cost and freight to the named destination." (Cal. U. Com. Code, § 2320, subd. (1).) The other evidence confirms that the parties here in fact intended Ideal to prepay the freight. Thus the bills of lading, created and signed by Mitsui, specifically confirm that freight was prepaid at Bangkok. Further, it is undisputed that Ideal in fact tendered prepayment for the freight to Mitsui, by a check which later was dishonored.

These express arrangements, confirmed by the parties' conduct, are inconsistent with Mitsui's claim that Dynasea agreed to pay the freight to *Mitsui.* The evidence without contradiction shows that Dynasea agreed to pay the freight to *Ideal,* and that Mitsui, when it agreed to transport the shrimp, looked to *Ideal* not Dynasea for payment of Mitsui's charges.

No reasonable consignee would bind himself to pay *both* the shipper and the carrier the same freight charges, and there was no evidence that Dynasea did so here.

---

[2]This matter is governed by maritime law. Contrary to what Mitsui asserts in its opening brief, the evidence in the record indicates the trial court applied maritime principles in deciding this matter.

Mitsui argues that the boilerplate on its bills of lading included Dynasea within the definition of "Merchant," and made all persons falling within the definition of "Merchant" jointly and severally liable for freight. But a party cannot bind another to a contract simply by so reciting in a piece of paper. It is rudimentary contract law that the party to be bound must first *accept* the obligation. In fact, Mitsui incorporates this basic principle elsewhere in its bill of lading form, where it states "In accepting this Bill of Lading the Merchant expressly accepts and agrees in all its terms whether printed, stamped, or written, or otherwise incorporated, notwithstanding the non-signing of this bill . . . by merchant."

There was no evidence that Dynasea signed the bills of lading, and no evidence that Dynasea *accepted* the bills of lading for the four containers it declined to accept. Thus the terms of the bills of lading themselves refute Mitsui's claim that Dynasea was bound thereunder.

Mitsui attempts to argue that Dynasea *impliedly* agreed to pay the freight. An implied contract is one evidenced in part or whole by the parties' conduct rather than by an express exchange of promises. Mitsui urges that Dynasea's promise to pay should be implied because: the shrimp were shipped for Dynasea's benefit; Dynasea acted as the "presumptive owner" by ordering the shrimp; Dynasea accepted one container.

But none of these facts give rise to an inference that Dynasea agreed to pay Mitsui. The identity of the orderor, owner, or acceptor of the goods in a transaction supports no reliable necessary inference about *who agrees to pay the freight.* The parties may agree that seller alone, buyer alone, or both, are liable for the freight, yet in each instance the buyer is the orderor and potential acceptor and owner of the goods. These facts provide no guidance about who is liable for the freight.

Here, the parties were free to agree that Ideal, not Dynasea, would pay Mitsui—regardless of who ordered, owned, or accepted the shrimp. The undisputed evidence shows that in fact they so agreed.

Our decision enforces a perfectly rational commercial arrangement, which made reasonable provision for payment for Mitsui's services (by Ideal), provided Ideal a source to recoup the freight cost (as part of the price paid by Dynasea), and protected Dynasea against potential double liability for freight costs which otherwise might occur if Dynasea paid Ideal "cost plus freight," Ideal failed to pay Mitsui, and Mitsui sought payment from Dynasea.

Contracts allocate, inter alia, risks associated with one party's failure to pay what it owes. The contracts here allocated to Mitsui the risk that Ideal

would fail to pay freight. If Mitsui was unhappy with this allocation of risk, it was free to ask Dynasea to agree to share the risk, by signing the bill of lading in advance of shipment. Or, Mitsui could have obtained insurance protecting against Ideal's default, insisted Ideal pay in advance with cash or cashier's check, or declined to carry the shrimp.

We will not save Mitsui from failing to take one of these obvious precautions by "implying" an agreement from facts which support no inference of an agreement.

Nor is there unjust enrichment or inequity here. Dynasea paid the freight for the container it accepted; it obtained no benefit from the containers it rejected.

### DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.